PENN ELECTRICAL & MFG. CO. v. CONROY.

CONROY v. PENN ELECTRICAL & MFG. CO. (two cases).

(Circuit Court of Appeals, Third Circuit.  February 7, 1908.)

Nos. 65, 66.

1. PATENTS—PRIOR USE—WHAT CONSTITUTES "PUBLIC USE"—"EXPERIMENTAL USE."

The use of a machine while it was being perfected, in a room from which the public and all others not engaged in its operation were excluded, changes and improvements being made from time to time, although extending back to more than two years before application was made for a patent, was an experimental and not a public use, and did not invalidate the patent granted therefor, and it is immaterial that the product of such experimental use was sold.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 95.

For other definitions, see Words and Phrases, vol. 6, pp. 5825-5837; vol. 8, p. 7774.

Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. City of New York, 69 C. C. A. 646.]

**2. SAME—VALIDITY AND INFRINGEMENT—MACHINE FOR ORNAMENTING GLASS.**

The Conroy patent, No. 735,949, for a machine for ornamenting glass, was not anticipated, and is not void for prior public use. Claim 1 also *held* infringed.

**3. SAME—ANTICIPATION—METHOD OF ORNAMENTING GLASS.**

The Conroy patent, No. 723,139, for a method of ornamenting glass, is void as simply for the function of a machine designed to manufacture an old product previously produced by hand by practically the same method.

**4. SAME—INFRINGEMENT—MACHINE FOR ORNAMENTING GLASS.**

The Conroy patent, No. 731,667, for a machine for ornamenting glass, construed, and *held* not infringed.

Appeals from Circuit Court of the United States for the Western District of Pennsylvania.

Paul Synnestvedt, Bayard H. Cristy, and George H. Christy, for appellant.

J. M. Nesbit and James I. Kay, for appellee.

Before DALLAS and GRAY, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. Two separate suits were begun in the court below, in each of which John M. Conroy was the complainant and the Penn Electrical & Manufacturing Company was the defendant, and in this opinion for convenience Conroy will be styled "complainant," and the manufacturing company, "defendant," as in the lower court. The bill of complaint in the cause, which will be first considered, was in the usual form in suits of this character, and included two patents No. 735,949, dated August 11, 1903, for a machine for ornamenting glass, and No. 723,139, dated March 17, 1903, for a method for ornamenting glass. The original application included claims for both the machine and the method, but, at the instance of the patent examiner, they were separated and ultimately appeared in the two patents just referred to. The bill of complaint in the second suit is founded upon patent No. 731,667, dated June 23, 1903, for a machine for ornamenting glass. All of the patents were issued to John M. Conroy, the complainant. The proofs in both suits were taken together, and the cases were argued together, both in the court below and in this court. In the first suit the Circuit Court held claim 1 of the machine patent valid and infringed by the defendant's machine No. 1, but found the method patent did not disclose a patentable invention within the meaning of the law, and consequently denied any injunction and accounting with respect thereto. The defendant thereupon appealed from that portion of the decree which allowed an interlocutory injunction against it upon the machine patent, and the complainant appealed from that portion of the decree denying an injunction and an accounting as to the method patent. In the second suit the Circuit Court held that the defendant had not infringed the patent therein involved, and accordingly dismissed the bill of complaint, from which decree the complainant appealed. The patent involved in the first suit will now be considered.

Claims 1, 4, 5, 6, and 7 of the machine patent were involved and both of the claims in the method patent. The art of chipping glass by

hand was old. Its origin does not appear in the record, although it does appear that the complainant practiced it as early as 1895, and that it was in use still earlier. The process, however, was somewhat laborious and slow, and in rapidity of execution the machine method far surpassed it. The hand tool and process of hand chipping may be described as follows: The tool consists of a bar of iron, with a forked or pronged head. One of the prongs, the lower one as used, is considerably longer than the other, and is curved inwardly in the shape of a claw or hook. A piece of glass previously scored with a diamond about one-eighth of an inch from its edge is placed with its scored face uppermost upon a table, and projecting over its side sufficiently far to allow the tool to be manipulated. The glass is ordinarily held with the left hand and the tool with the right. When the tool is applied, the upper and shorter prong is above and the curved prong below the glass. The handle of the tool is then lifted, and a quick downward stroke given, which forces the lower and curved prong against the under surface of the glass, and causes the upper prong to strike its scored edge. The blow thus given chips or scallops the glass. The tool is then moved rapidly along the edge of the glass, and the operation repeated as often as may be desirable.

Claim 1 of the machine patent which was found in the court below to have been infringed by the defendant is as follows:

"In a machine for shaping the edges of glass articles, the combination of a carrier having a series of two or more pins secured to the carrier and spaced in the direction and transversely of the path of movement of the carrier so as to operate successively and at different points on the article, means for moving the carrier and a rest or bearing arranged to support the article adjacent to the edges to be operated on, substantially as set forth."

The machine in one of its forms, briefly described, consists of a cast-iron cylinder or drum of considerable length, diameter, and weight, which is mounted in a suitable bed to rotate in a horizontal position on a central shaft. On the face of the drum and projecting slightly therefrom are steel pins arranged in four evenly spaced straight rows; each row extending diagonally across the face of the drum. The pins are made of small steel rods, and are bevelled at their exposed tips. A rest bar is supported by the bed of the machine across, and in close proximity to the face of cylinder, but at a level lower than the axis of the drum. When the machine is operated, the drum is caused to revolve, and the piece of rectangular glass intended to be ornamented is held by the operator upon the rest bar and against the face of the drum, whereupon as the drum revolves the pins of the approaching row rapidly, and, in turn, strike the glass at its edge at equidistant points. The edge thus presented to the machine is quickly scalloped, when the operator may, if desired, present in turn its various sides to the machine until their ornamentation is likewise completed. The machine because of the rapid and uniform character of its work has supplanted the old hand method. We deem it unnecessary to discuss in detail the prior art, since it does not disclose anything which can properly be considered an anticipation of the complainant's machine patent. He was the first to devise a practical machine for decorating glass. The file wrapper of patent No. 723,139 discloses that the examiner found no

device or method anticipating those claimed by the applicant under the subclass of "Glass," "Ornamenting" and "Cutters." Among the many patents cited as anticipations are machines for gear cutting, saw tooth cutting, dressing stone, finishing the edge of cards, and other like purposes, none of which, however, are in the same or in an analogous art; but were they, they are all, in our opinion distinguishable from the patent in suit, notwithstanding the surface resemblance in some respects of one or two of them.

The above defense was not, however, so strongly insisted upon at the oral argument as was that of prior use by the complainant and anticipation by the defendant. The learned judge below, speaking of this question, said that, while it was not without difficulty, nevertheless, in his judgment, the alleged use was experimental, and in this view he is satisfactorily supported by the proofs. The first machine built by the complainant is known in the case as the "Rieseck drum," and was operated subject to various changes, tests, and alterations for about two years, or until February, 1901, when what is known in the case as the Jones and Laughlin drum was installed, which the evidence shows is still in use. Soon after the idea of a machine for chipping glass was presented to Conroy, he procured from one Rieseck an ordinary broad-faced belt pulley, equipped it with steel pins projecting from holes drilled to receive them, and mounted it upon a frame on which it was to rotate. A rest bar was also arranged, upon which the glass could be held by the operator. The machine, when tested, did not prove satisfactory. There were many difficulties to be overcome. Its imperfection was shown by the frequent breaking of the glass. The rest bar which at first was made of wood, was found to be too springy, and, after various alterations, a bar of tool steel was applied, and proved satisfactory; but its proper adjustment, in order that glass of various thicknesses might be decorated, and its relative position to the drum and glass, had to be ascertained by experiment. Various other matters, such as the extent to which the pins should project, their size, and shape, afforded more or less perplexing problems for solution. It is unnecessary, however, to mention, much less discuss, all of the various changes and adjustments which from time to time were made in the machine in the effort to perfect it. It is sufficient to say that they extended to a time within two years of filing the application for a patent. During this experimental stage the machine was used under the supervision of the complainant and his foreman, but its use was not public within the meaning of the statute. The machine was placed in a room on the first floor of the factory, which was partitioned off from the main shop. No persons, other than one operating the machine and a girl engaged in cleaning the glass, were present. If employés entered that apartment, they did so contrary to express orders. The glass in its windows was painted, and a wooden hood was built for the machine, which, when it was not in operation, was placed over it and locked, and as a further measure of privacy the machine was after a time removed to the second floor of the factory. These precautions were continued until the patent was obtained. From what has been said it is apparent that whatever knowledge, if any, was obtained of the machine by the public, was

surreptitious and contrary to the manifest wish and intention of the inventor. In Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, Mr. Justice Bradley, speaking for the court, at page 134 of 97 U. S. (24 L. Ed. 1000), says:

"When the subject of invention is a machine, it may be tested and tried in a building, either with or without closed doors. In either case such use is not a public use within the meaning of the statute, so long as the inventor is engaged, in good faith, in testing its operation. He may see cause to either alter it and improve it, or not. His experiments will reveal the fact whether any and what alterations may be necessary. If durability is one of the qualities to be attained, a long period, perhaps years, may be necessary to enable the inventor to discover whether his purpose is accomplished. And though, during all that period, he may not find that any changes are necessary, yet he may be justly said to be using his machine only by way of experiment; and no one would say that such a use, pursued with a bona fide intent of testing the qualities of the machine, would be a public use within the meaning of the statute. So long as he does not voluntarily allow others to make it and use it, and so long as it is not on sale for general use, he keeps the invention under his own control, and does not lose his title to a patent."

Nor do we think that the sale of the product during the experimental stage alters the situation. In Jennings v. Pierce, Fed. Cas. No. 7,283, Judge Shipman says:

"It would be a harsh limitation of the statutory rights of an inventor which should give to a naked infringer the privilege of using an invention, because the patentee had attempted, in good faith and in secrecy, to incidentally make his experiments of some pecuniary benefit, while he was patiently endeavoring, amid many failures, to remedy the defects of the machine, test its value, and ascertain whether it could be used advantageously, and whether it ever would be of any benefit either to himself or to the public."

In Smith Co. v. Sprague, 123 U. S. 249, 256, 8 Sup. Ct. 122, 126, 31 L. Ed. 141, the court lays down this test:

"A use by the inventor, for the purpose of testing the machine, in order by experiment to devise additional means for perfecting the success of its operation, is admissible, and where, as incident to such use, the product of its operation is disposed of by sale, such profit from its use does not change its character; but where the use is mainly for the purpose of trade and profit, and the experiment is merely incident to that, the principle and not the incident must give character to the use. The thing implied as excepted out of the prohibition of the statute is a use which may be properly characterized as substantially for purposes of experiment."

We are convinced that, while the product of the Rieseck machine was sold, such sale was incidental to its experimental use. Our conclusion is that no such use has been shown as invalidates this patent. An attempt was also made to show prior use on the part of the defendant. We deem it unnecessary, however, to discuss this evidence at length. It appears that in the latter part of December, 1900, or prior to the middle of January, 1901, the defendant made and used a machine for chipping glass. It was, however, an experimental machine, and to some extent imperfect; and while considerable work was performed by it for several months, and its aggregate product was quite large, nevertheless, considering the length of time it was in operation, its weekly output was small. Some of the witnesses speak of it as an experiment, and it is noticeable that hand chipping was not abrogated during its use.

Furthermore, it was operated in part at least, by night, and upstairs in the factory, so that its use was private rather than public. The burden of proof upon this part of the case rests upon the defendant, and every reasonable doubt should be resolved against it. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, 285. The defendant's machine No. 1 was in the court below decreed to infringe claim 1 of the patent just considered. Briefly described, it consists of a frame in which a pivoted arm oscillates in a vertical plane. On this arm are arranged and spaced a series of pins in an oblique line across its face. When operated, the arm oscillates up and down in proximity to a rest bar on which the plate of glass is held, and the arm thus moved causes the pins thereon to strike successive blows on the edge of the glass, which produces the desired scallops. This oscillating arm carrying the pins differs from the complainant's device as shown in figures 4 and 5 of the patent only, in this: That it is pivoted, while in the complainant's it moves up and down in guides. The mechanism and mode of operation are substantially the same, and the defendant's machine is plainly an infringement.

We come, now, to a consideration of the method patent, which the court below held void "as simply being for the function of a machine devised to manufacture an old product." The question presented for consideration is not so much whether an old or a new product was created by the method claimed, but whether or not there was in point of fact a new method disclosed; or, further narrowed and applied to the present case, the question is whether the method pursued in the use of the hand tool, prior to the patent for the machine, was substantially the same as that followed in the use of the machine. If the complainant simply gave to the art a better implement for proceeding by an old method, his method patent is void. There are two claims in the method patent as follows:

"As an improvement in the art of shaping the edges of glass articles, the method herein described which consists in removing by blows at successive points closely adjacent to the edge, the edge and a portion of the opposite side of the article in pieces approximately uniform in quantity, substantially as set forth.

"As an improvement in the art of shaping the edges of glass articles, the method herein described, which consists in removing by blows at successive points closely adjacent to the edge pieces approximately uniform in shape from the edge and a portion of the opposite side, substantially as set forth."

Counsel for the complainant studiously attempts to differentiate the method of the hand tool from that of the machine, in this: That, while the latter method removes the chips of glass by blows, the former does it only by what he described as a "prying" or "pressure" or "pinching" method. This suggested distinction, in any event, would seem to be very attenuated; but, however that may be, the proofs do not disclose its existence in point of fact. In the use of the hand tool a blow is struck, which, although possibly not of the same force and uniformity as the blow struck by the machine, is nevertheless essentially like it. At the most, the difference is one of degree. In both cases blows are struck, and struck at successive points closely adjacent to the edge of the article, which remove the edge and a portion of the opposite side

of the glass, and the pieces removed are approximately uniform in size and shape. Thus we have substantial identity of operation in both cases. The claims of the method patent include the hand operation, as well as the machine operation. The hand and machine methods of chipping glass are essentially the same. The fact that in one case the work is done by a hand tool, and in the other by a machine, does not influence, much less control, the decision of the question. The complainant did not discover a new method of chipping glass. It is rather the old method performed by a new tool. As already suggested, it is impossible to demonstrate wherein the claims of this patent set forth anything not methodically pursued in the hand operation. As counsel for the defendant well says:

"If, in order to escape anticipation by the hand method, complainant seeks to differentiate therefrom upon the theory that his is a machine-practiced method, then his method is, and can mean, nothing more than the functional operation of the machine, which is, of course, not patentable."

We think the court below was right in holding this patent invalid.

Coming to the second suit, based upon patent No. 731,667, we find that it has two claims as follows:

"(1) In a machine for shaping the edges of glass articles, the combination of a movable carrier having a pin secured thereto, a table arranged to support the glass at an angle less than a right angle to the axis of the pin at the time of impact on the glass, and means for shifting the table step by step across the path of movement of the pin, substantially as set forth.

"(2) In a machine for shaping the edges of glass articles, the combination of a rotating carrier having a pin projecting radially therefrom, a table for supporting the glass, and means for shifting the table step by step across the path of movement of the pin, substantially as set forth."

Both of the claims are involved in the suit. The patent describes two machines, one for chipping circular plates where the plates are supported on a rotating table, moved by suitable mechanism step by step in position to be operated upon by a single pin on a rotating head or carrier, and the other where the work is moved in a straight line step by step past the single pin on the carrier. In the specification the patentee says:

"In operating the machine, the feed movement is so adjusted that for each operative stroke of the carrier the bed or table carrying the glass is moved forward a distance equal to that of the desired spacing of the scallops."

When the machine is operated, the table to which the glass is clamped rotates or moves in a direct line, as the case may be, step by step "a predetermined distance," thus bringing the edge of the glass "across the path of the movement of the pin." The court below found that the defendant's machine did not infringe this patent, and we concur in its judgment. In the defendant's device the table to which the plate of glass intended for decoration is clamped is stationary, and its chipping tool rotates around this fixed plate; while in the complainant's, as we have seen, the plate rotates step by step, while the chipping tool moves in a fixed path. It is claimed on behalf of the complainant that the defendant's arrangement of parts is a mere transposition of the complainant's, and therefore does not avoid infringement. This is not so. The structures are mechanically different, and the distinction between them

does not consist in a mere reversal of parts. Each of the claims of the patent calls for a movable table and means for shifting the table step by step across the path of movement of the pin, while one of them calls for a movable carrier, and the other for a rotating carrier. Certainly neither these elements nor their counterparts are found in the defendant's device. In them, the glass being held in a fixed position, the movement required for chipping its edge in successive scallops is all devolved upon the chipping mechanism, which necessarily requires that the chipping tool be moved at right angles to the edge of glass being chipped, and also progressively along that edge, in order that the chipping mechanism shall be in the proper position to strike successive blows. Again, as expressed by defendant's counsel:

"But, even if it should be held that the forwardly advancing pin carrier of defendant's machine No. 3 is the equivalent or transposition of the movable table of Conroy, even then defendant's structure does not contain means for advancing the transposed part step by step, specifically called for in each claim. In defendant's machine No. 3 the horizontal movement of the pin carrying arm, 8, is continuous or uninterrupted, and is not an intermittent step by step movement. The handle is simply grasped by the operator, and pulled around by a continuous and uninterrupted movement or swing. It cannot be said that the up and down ratchet-actuated vibrations of the pin comprise the step by step movement of the claims; for, if these vibrations correspond to or are the equivalent of anything in the Conroy machine, it is either the rotating or the vertical reciprocating movement of the pin carrier, the movement which carries the pin into engagement with the glass."

The step by step movement incorporated in both of the claims and fully described in the specifications can mean only that the glass is advanced by an intermittent movement as distinguished from a continuous movement. It is a progressive movement, broken by steps, and, as said by the learned judge below:

"In view of Conroy's earlier devices, and the restricted field open for the grant of this patent, the movable table will be regarded as one of its essential features. It is evident, if the patent depends for novelty simply on the use of a single pin on a carrier, instead of the multiple pins of the other device, a grave question of patentability would arise. The other feature of a shifting feed is required to confer patentability on the combination."

There is no room for speculation as to what is meant by the movable or rotating pin carrier and the movable table. Not only do they co-operate, but their method of co-operation is entirely clear. The rotation of the pin carrier is necessary to the patented device. It would be impossible in the complainant's machine to hold the glass immovable and at the same time advance the chipping mechanism around the glass, and produce a succession of chips. In our opinion the defendant's devices do not infringe this patent. There are elements in the claims of the Conroy patent which are not found in the defendant's device, nor are they mechanical equivalents. The case presented is therefore not one of a transportation of parts, but of different mechanical structures. The parts cannot be used interchangeably. The difference between the complainant's and defendant's devices are more fully discussed in the opinion of the court below, and it is unnecessary to repeat them here. It is sufficient to say that no one of them presents the elements of a movable table or means for moving it step by step across

the path of movement of the pin which the patent requires. Our conclusions upon the whole case are that, as to the patents involved in the first suit, the machine patent No. 735,949 is valid, and its first claim infringed by the defendant's machine No. 1, and that the method patent 723,139 is invalid.

The decree in that suit is therefore affirmed, but without costs, as neither party succeeded on appeal. In the second suit, based upon patent No. 731,667, we find that it has not been infringed. Consequently the decree in that case is affirmed, with costs.